UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JOHN DUDEK, *et al.*, § | |
| *Plaintiffs* § | |
| § | |
| v. § | Case No. SA-24-CA-01162-XR |
| § | |
| BALFOUR BEATTY COMMUNITIES § | |
| LLC, *et al.*, § | |
| *Defendants* § | |

## ORDER

On this date the Court considered Plaintiffs' motion to remand (ECF No. 11), Defendants' response (ECF No. 14), and Plaintiffs' reply (ECF No. 15). After careful consideration, the Court issues the following order.

## BACKGROUND

Plaintiffs,[1] military families that have lived in or currently live in privatized military housing, filed this action in state court against their landlords, Defendants,[2] seeking to recover for injuries caused by the allegedly deplorable conditions of their housing units at Fort Bliss and Lackland Air Force Base. *See* ECF No. 1-1.

Plaintiffs allege that their homes pose severe health hazards and safety risks, including toxic mold, water damage, pest infestations, and asbestos. They assert state-law claims for breach of contract, violations of the Deceptive Trade Practices Act ("DTPA") and the Texas Property

---

[1] Plaintiffs include John and Sarah Dudek and their minor children, P..D. and A.D.; Jacob and Megan Espinosa and their minor children, I.R.P. and H.A.E.; Jennifer Noriega and her minor child, P.N.; John Blumenfeld; Daisy Soliz; Rafael Marrero; Andrew Hill and his minor child, A.H.; Joseph and Anna Witz and their minor children, A.B., J.W.J., and J.W.; and Bethany and Lavell Johnson, and their minor children, G.J. and L.J.

[2] Defendants include Balfour Beatty Communities, LLC, Fort Bliss/White Sands Missile Range Housing LP d/b/a Fort Bliss Family Homes, Lackland Family Housing, LLC d/b/a Lackland Family Homes, BBC Military Housing Bliss/WSMR General Partner LLC, Balfour Beatty Military Housing Management, LLC, BBC AF Management/Development, LLC, Sonia Maranon, and Greg Meinert.

Code, breach of the implied warranties of habitability and good and workmanlike repairs, negligence, common law and statutory fraud, unjust enrichment, and nuisance. *See id.* at 30–46. Defendants timely removed the case to federal court based on the Federal Enclave Doctrine, asserting that Plaintiffs' claims arise from events occurring on military bases. ECF No. 1.

Plaintiffs move to remand. They argue that Defendants, despite presenting several deeds for properties at Fort Bliss and Lackland Air Force Base, have failed to prove that the houses at issue are located within the confines of the federal enclaves at the Bases where the federal government might possess exclusive legislative jurisdiction. ECF No. 11.

## DISCUSSION

### I. Legal Standard

On a motion to remand, a court must consider whether removal to federal court was proper. Removal is proper in any "civil action brought in a State court of which the district courts of the United States have original jurisdiction," including cases that arise under federal law. 28 U.S.C. § 1441(a); 28 U.S.C. § 1331.

The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). The removal statute is strictly construed in favor of remand. *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014) (citing *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)). The Court must resolve "all factual allegations," "all contested issues of substantive fact," and "all ambiguities in the controlling state law" in the plaintiff's favor. *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005). In other words, "any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

Determining whether a particular case arises under federal law generally turns on the "well-pleaded complaint" rule, which states that the basis for federal jurisdiction must be "presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (internal citations omitted). Plaintiffs are masters of their own complaints and may generally allege only a state-law cause of action even where a federal remedy is also available. *Id.* That federal law might provide a defense to a state-law claim does not create federal question jurisdiction. *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011).

"A federal question exists 'only [in] those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Singh v. Duane Morris LLP*, 538 F.3d 334, 337–38 (5th Cir. 2008) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27–28 (1983)).

## II.   Analysis

"Under the Constitution the United States has the power to acquire land from the states for certain specified uses and to exercise exclusive jurisdiction over such lands, which are known as federal enclaves." *Lord v. Local Union No. 2088, Intern. Broth. of Elec. Workers, AFL-CIO*, 646 F.2d 1057, 1059 (5th Cir. 1981) (citing U.S. CONST. art. I, § 8, cl. 17); *Morgan v. Rankin*, 436 F. App'x 365, 365 (5th Cir. 2011); *see also Lawler v. Miratek Corp.*, No. EP-09-CV-252-KC, 2010 WL 743925, at *2 (W.D. Tex. Mar. 2, 2010) ("Federal enclave jurisdiction is a subspecies of federal question jurisdiction[.]"). As a result, "federal courts have at least concurrent original jurisdiction" over "tort claims that arise on federal enclaves." *Lawler*, 2010 WL 743925, at *2 (citing *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006)); *Mater v. Holley*, 200 F.2d 123, 123–24 (5th Cir. 1952)).

"The federal enclave doctrine is not applicable to all land that has been acquired by the United States 'by purchase or condemnation,' but arises only where the state has consented to the transfer of sovereignty." *Balderrama v. Pride Indus., Inc.*, 963 F. Supp. 2d 646, 659 (W.D. Tex. 2013) (citing *Paul v. United States*, 371 U.S. 245, 264–65 (1963)); *United States v. Gliatta*, 580 F.2d 156, 158 (5th Cir. 1978); *Dekalb County v. Henry C. Beck Co.*, 382 F.2d 992, 994–95 (5th Cir. 1967); *Wood v. Am. Crescent Elevator Corp.*, No. CIV.A. 11-397, 2011 WL 1870218, at *2 (E.D. La. May 16, 2011).

The Supreme Court has outlined at least two requirements for establishing a federal enclave within the exclusive jurisdiction of the federal government: (1) the United States must acquire land through purchase, condemnation, or cession from a state to erect forts, magazines, arsenals, dock-yards, or other needful buildings; and (2) the state legislature must consent to the jurisdiction of the federal government. *See Paul*, 371 U.S. at 264–65. Furthermore, if the property was acquired after 1940, the federal government must accept jurisdiction "by filing a notice of acceptance with the Governor of the State or in another manner prescribed by the laws of the State where the land is situated." 40 U.S.C. § 3112(b); *see also id.* § 3112(c) ("It is conclusively presumed that jurisdiction has not been accepted until the [federal] Government accepts jurisdiction over land as provided in this section."); *Paul*, 371 U.S. at 264–65; *Dekalb County*, 382 F.2d at 994–95 (holding that the United States must take some affirmative action to accept jurisdiction over federal enclaves).

Military bases may contain "numerous units [of land] acquired at various times, some of which may be subject to 'exclusive' federal jurisdiction and some of which may not be." *See Paul*, 371 U.S. at 269–70; *Torrens v. Lockheed Martin Servs. Grp., Inc.*, 396 F.3d 468, 470 (1st Cir. 2005); *Commonwealth of Virginia v. Reno*, 955 F. Supp. 571, 573 (E.D. Va. 1997), (vacated as

4

moot by 122 F.3d 1060). With respect to Fort Bliss, for example, "because different sections . . . were acquired in a series of different transactions over many decades," it appears the federal government does not exercise exclusive legislative jurisdiction over "at least some portions of Fort Bliss." *See Balderrama*, 963 F. Supp. 2d at 657–58; *Cramer v. Logistics Co., Inc.*, No. EP-13-CV-333-KC, 2014 WL 652319, at *2 (W.D. Tex. Feb. 19, 2014) (same).[3]

Lackland AFB was similarly formed in a piecemeal manner, made further complicated by transfer of portions of the now-closed Kelly AFB to Lackland.[4] For example, between 1953 and 1958, Kelly acquired 755 acres of land—later transferred to Lackland—in which the federal government held only a proprietorial interest, rather than exclusive legislative jurisdiction.[5] In light of this complicated history, courts have declined to generically classify Lackland AFB as a federal enclave. In *Blair v. Siemsen*, for instance, a Magistrate Judge remanded a negligence suit for injuries to an infant that allegedly occurred at a day care center on Lackland AFB due to doubts about enclave status:

> To support her contention that Lackland is a federal enclave, Siemsen provides only a brief history of Lackland, a few references to web sites for more historical information, and an affidavit stating that Siemsen's day care was operated on property located within Lackland's boundaries. This does not constitute sufficient evidence to show that Lackland is a federal enclave.

No. SA-08-CV-0004 NN, 2008 WL 2414559, at *2 (W.D. Tex. June 12, 2008).

---

[3] *See also Cent. Ed. Agency v. Indep. Sch. Dist. of City of El Paso*, 254 S.W.2d 357, 358–59 (1953) (observing that while "Fort Bliss Military Reservation contained an area of 8.98 square miles" in 1939, the federal government had "enlarged the area" to contain "approximately 101 square miles" by 1949); *Hardcastle v. Sibley*, 107 S.W.2d 432, 437 (Tex. Civ. App. 1937) (describing an appropriation by the United States in 1930 "for the purpose of acquiring land adjacent to Fort Bliss for the enlargement of said fort").

[4] *The Inventory Report on Jurisdictional Status of Federal Areas Within the States as of June 30, 1962* [hereinafter "*Inventory Report*"], https://publiclandjurisdiction.com/wp-content/uploads/2020/01/JURISD1.pdf (Sept. 3, 1962).

[5] *Inventory Report* at 743 [virtual page no. 770]; *The Operational Range Assessment for Joint Base San Antonio - Lackland* , https://www.denix.osd.mil/orap/denix-files/sites/31/2019/08/2018_TX657152412900_JBSALackland.pdf (Feb. 2019).

Defendants contend that Plaintiffs, by describing their homes as "on-base" housing, have conceded that their claims are subject to federal enclave jurisdiction. ECF No. 14 at 11. This argument assumes too much. It is undisputed that at least *some* portions of the land at Fort Bliss and Lackland are federal enclaves; the question is whether any of the housing units at issue in this case are themselves located within the Bases' federal enclaves. *See Lawler v. Miratek Corp.*, No. EP-09-CV-252-KC, 2010 WL 743925, at *3 (W.D. Tex. Mar. 2, 2010) (observing that the "exact geographical location" of where the claim arose determines the applicability of the federal enclave jurisdiction and remanding claims arising out of an off-enclave building to state court).

Defendants have presented several deeds for property comprising some of Fort Bliss and Lackland AFB. *See* ECF No. 14 at 20–34. Many of the supporting documents clearly establish federal enclave jurisdiction over the geographic locations they describe. *See, e.g., id.* at 21 (1954 Department of the Army letter accepting exclusive jurisdiction over 58,078.16 acres of land transferred to Fort Bliss by the State of Texas). There is no evidence, however, that these deeds reflect the *entirety* of Fort Bliss and Lackland AFB. Nor have Defendants submitted any evidence that the houses at issue are located on the real property that is described in the deeds.[6]

In short, Defendants have not met their burden of showing that removal was proper because the specific housing units at issue in this case are located on real property subject to federal enclave jurisdiction. *De Aguilar*, 47 F.3d at 1408. While it is possible that all the relevant housing units are located on federal enclaves, "any doubt about the propriety of removal must be resolved in favor of remand." *Gasch*, 491 F.3d at 281–82; *see also Vantage Drilling*, 741 F.3d at 537; *Guillory*, 434

---

[6] Defendants might have succeeded on their jurisdictional position if they had shown that even one of the relevant housing units is located on a federal enclave. Then, assured of its jurisdiction over at least one subset of claims, the Court could have exercised supplemental jurisdiction over any claims involving housing outside of the geographic limits of a federal enclave but arising from the same set of facts. *See* 28 U.S.C. § 1367(a); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966) (requiring a "common nucleus of operative fact" for supplemental jurisdiction).

F.3d at 308. The Court concludes that it lacks subject matter jurisdiction over this case, which, accordingly, must be remanded to state court.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to remand (ECF No. 11) is **GRANTED**.

The Clerk is **DIRECTED** to **REMAND** this case to the 73rd Judicial District Court of Bexar County, Texas, and to **CLOSE** this case.

It is so **ORDERED**.

**SIGNED** this 10th day of February, 2025.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE